## IN THE COURT OF APPEALS OF IOWA

No. 24-0431
Filed May 8, 2024

**IN THE INTEREST OF L.L., B.L., and K.L.,**
**Minor Children,**

**K.M., Mother,**
        Appellant,

**L.L., Father,**
        Appellant.
_____

        Appeal from the Iowa District Court for Jasper County, Steven J. Holwerda,

Judge.


        Parents separately appeal the termination of their parental rights.

**AFFIRMED ON BOTH APPEALS.**


        Larry J. Pettigrew of Pettigrew Law Firm, P.C., Newton, for appellant

mother.

        Andrew J. Tullar of Herting Law, PLLC, West Des Moines, for appellant

father.

        Brenna Bird, Attorney General, and Natalie Hedberg, Assistant Attorney

General, for appellee State.

        Meegan M. Keller of Keller Law Office, Altoona, attorney and guardian ad

litem for minor children.


        Considered by Bower, C.J., and Badding and Buller, JJ.

**BADDING, Judge.**

A mother, who took no steps to stop using methamphetamine, and a father, who began the proceedings with active warrants for his arrest and ended the proceedings in prison, appeal the termination of their parental rights. The mother's parental rights were terminated to three children—born in 2018, 2019, and 2023—under Iowa Code section 232.116(1)(e), (f), (g), (h), and (*l*) (2023).[1] The parental rights of the oldest child's father were terminated under section 232.116(1)(e) and (f).[2] On appeal, the mother claims termination is not in the children's best interests due to the closeness of the parent-child bonds and asks for additional time to work toward reunification. The father challenges the sufficiency of evidence supporting the grounds for termination of his rights, argues termination is not in his child's best interests, requests application of a permissive exception to termination, and asks for additional time. We affirm upon our de novo review of the record.

## I. Background Facts and Proceedings

Both parents have a history of methamphetamine use. The mother's parental rights to another child were terminated in 2017 with her consent. The main concern in that proceeding was the mother's methamphetamine use. The mother had two more children before the Iowa Department of Health and Human Services became involved with the family again. In October 2022, law

---

[1] The mother's rights were terminated as to all three children under paragraphs (e), (g), and (*l*); paragraph (f) as to the two older children; and paragraph (h) as to the youngest child.

[2] Paternity testing confirmed the appealing father is not the father of the younger two children. The parental rights of any unknown fathers of the younger two children were also terminated. No other father appeals. Unless otherwise noted, references to the father in this opinion are to the appealing father.

enforcement executed a search warrant on the home the mother shared with her children and found a large quantity of methamphetamine and drug paraphernalia. The mother was arrested, and the children later tested positive for methamphetamine. The mother was charged with multiple drug offenses, including possession of more than five grams of methamphetamine with intent to deliver,[3] and two counts of child endangerment. At the time, the father had active warrants for his arrest. As a result, the State obtained an order for temporary removal of the children and filed child-in-need-of-assistance petitions. The children were adjudicated as in need of assistance in December.

Around the same time, the father was arrested for domestic abuse assault against the mother, who was pregnant with her third child, after beating her with a belt and "a sock with a rock in it." Both parents completed substance-use evaluations—the mother in January 2023 and the father in February—but neither followed through with treatment. The youngest child was born in February. The mother tested positive for methamphetamine at the hospital, as did the newborn, who showed "signs of distress and withdrawal." The child was immediately removed from parental custody and later adjudicated as in need of assistance.

The mother entered inpatient treatment in March, but she left the same day without explanation and was unsuccessfully discharged. The father started outpatient treatment in April, but he refused drug testing through the department. He then admitted to methamphetamine use in May. The mother tried inpatient

---

[3] More than seventy-five grams of methamphetamine was found in the mother's residence.

treatment again in May but, like before, she left the same day.[4]  Two days later, the father was sentenced to a term of imprisonment not to exceed five years on a conviction for willful injury causing bodily injury.

From there, the father remained in prison, and the mother made no progress toward reunification.  So in October, the department recommended proceeding to termination.  In its permanency order, the court denied the mother's request for a six-month extension and directed the State to file termination petitions.  The State did so in November.  In December, the father was sentenced to another 180 days in jail for the second-offense domestic abuse assault against the mother, to be served consecutively to his current term of imprisonment.

At the termination hearing in February 2024, the mother's drug and child-endangerment charges were still pending.  One of those charges was a class "B" felony, which carried a potential sentence of seventy-five years in prison as an enhanced second or subsequent offense.  *See* Iowa Code §§ 124.401(1)(b)(7); 124.411(1); 902.9(1)(b).  The mother testified that she had been "clean for a few weeks" and asked for more time for reunification, arguing: "I don't know why we're continuing to focus on what I have been doing, because I'm trying to focus on what I am going to do to give my kids the best life they can have."  But the mother agreed that just four days before the termination hearing, she refused to submit to drug testing.  While the father was still in prison, he testified that he "would discharge

---

[4] Aside from the two times that the mother entered inpatient treatment and left in less than twenty-four hours, she failed to appear for thirteen admission appointments between March and October 2023.

next year," though he expected "to be out way before that"—possibly in late 2024 or early 2025. He likewise requested more time.

As noted, the juvenile court terminated the parents' rights on multiple grounds. On their requests for additional time, the court explained it could not "think of any reasonable factors or conditions which will allow the court at this time [to] make a determination that the need for removal will no longer exist in six months. The realities of the past 16 months do not permit such a determination." As for the permissive bond exception to termination in section 232.116(3)(c), the court found that, although bonds existed, neither parent showed termination would be detrimental to the children. The parents separately appeal.

## II.    Analysis

Although we normally apply a three-step analysis in conducting our de novo review of terminations of parental rights, we confine our review to the steps separately raised by the parents on appeal. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). If those steps support termination, we consider any other issues, here being both parents' request for additional time.

### A.    Grounds for Termination

Only the father disputes the first step in our termination framework, arguing the evidence was insufficient to support the grounds for termination of his rights, section 232.116(1)(e) and (f). "[W]e may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). Focusing on section 232.116(1)(f), the father acknowledges that he was in prison at the termination hearing but "believes he may be released from prison in the near future and could resume

services and care of the child" then. But the State only needed to prove that the child could not be returned to the father's custody at the termination hearing. *See* Iowa Code § 232.116(1)(f)(4); *D.W.*, 791 N.W.2d at 707. The State met that burden because of the father's incarceration. *See, e.g.*, *In re E.R.*, No. 23-2059, 2024 WL 962320, at *2 (Iowa Ct. App. Mar. 6, 2024) ("Both parents' incarceration at the time of the termination hearing prevented the children's return to their custody." (cleaned up) (citation omitted)).

### B. Best Interests

Turning to the second step, both parents argue termination is contrary to the children's best interests. In considering whether termination is in a child's best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). The mother only argues termination is not in the children's best interests because of her bonds with the children. This claim is more properly addressed under the third step, discussed below.

For his best-interest argument, the father points out that he participated in treatment before his imprisonment, argues he has addressed his substance use, and claims he can provide proper care for his child upon his release. On our review, we cannot conclude these allegations weigh against termination. *See* *P.L.*, 778 N.W.2d at 40 (stating in the second step, "the court must consider whether to terminate by applying the factors in section 232.116(2)"). While the father did attend some treatment, he admitted to methamphetamine use the week before he went to prison in May 2023. Beyond substance use, there were

concerns about the father's anger issues and mental health. We agree with the juvenile court that these problems, which remain unresolved despite more than one year of services, prevented the father "from providing for the child's safety, long term nurturing and growth, and physical mental and emotional needs." And it's simply not in the child's best interests to keep waiting for permanency while the father gets his life together. *See In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997). So we agree with the juvenile court that termination of the father's parental rights is in the child's best interests.

### C.  Permissive Exception

Both parents request application of the permissive exception to termination in section 232.116(3)(c), which authorizes the court to forgo termination when it "would be detrimental to the child . . . due to the closeness of the parent-child relationship." But the mother agreed in her testimony that there was no bond between herself and the youngest child. And, while there was a bond between the parents and the two older children, a bond alone is not enough. *See In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021) ("[T]he existence of a bond is not enough."). Neither parent presented any evidence that either child would suffer physical, mental, or emotional detriment upon termination. *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) ("[T]he parent resisting termination bears the burden to establish an exception."). Nor was that apparent from the record, which showed the children were doing well in their foster homes. We conclude this exception does not apply.

### D.  Additional Time

Last, both parents request more time to work toward reunification. Additional time is appropriate only if we can conclude "the need for removal . . . will

no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). Beyond the mother arguing that she "can be successful in the future" and the father stating more time would be in his child's best interests, neither parent identifies any "specific factors, conditions, or expected behavioral changes which [would] comprise the basis for the determination that the need for removal . . . will no longer exist at the end of" an extension of time. *See id.* "It is not our role to advocate what potential circumstances would warrant an extension on the [parents'] behalf, and we decline to do so." *In re A.H.*, No. 20-1660, 2021 WL 1399743, at *4 (Iowa Ct. App. Apr. 14, 2021).

Even if we could advocate for the parents, the record does not show that additional time would alleviate the need for removal. The mother is in the same position she was at the beginning of the case—struggling with her sobriety and taking no meaningful steps to remedy her substance use or mental health. And the father's own testimony shows he will still be in prison in six months. *See In re L.S.*, No. 21-2000, 2022 WL 2826024, at *1 (Iowa Ct. App. July 20, 2022) (finding additional time inappropriate where record did not show father would be out of jail or prison at the end of a six-month extension).

For these reasons, we affirm the termination of both parents' rights.[5]

**AFFIRMED ON BOTH APPEALS.**

---

[5] As to the father's references in his petition on appeal to a guardianship in lieu of termination, that issue is not preserved because it was neither raised in nor decided by the district court. In any event, "a guardianship is not a legally preferable alternative to termination." *A.S.*, 906 N.W.2d at 477 (citation omitted).